[Cite as *State v. Lee*, 190 Ohio App.3d 581, 2010-Ohio-5672.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

THE STATE OF OHIO,

    APPELLEE,                          CASE NO. 3-10-11

    v.

LEE,                                  O P I N I O N

    APPELLANT.

THE STATE OF OHIO,

    APPELLEE,                          CASE NO. 3-10-12

    v.

STALL,                              O P I N I O N

    APPELLANT.

THE STATE OF OHIO,

    APPELLEE,                          CASE NO. 3-10-13

    v.

WEESE,                              O P I N I O N

    APPELLANT.

Case No. 3-10-11, 3-10-12 and 3-10-13

**Appeals from Crawford County Common Pleas Court**
**Trial Court Nos. 09-CR-0169, 09-CR-0170 and 09-CR-0179**

**Judgment Affirmed in Case No. 3-10-11**
**Judgment Affirmed in Case No. 3-10-13**
**Judgment Affirmed in Part, Reversed in Part and**
**Cause Remanded in Case No. 3-10-12**

**Date of Decision: November 22, 2010**

**APPEARANCES:**

**Clifford J. Murphy, Assistant Crawford County Prosecuting Attorney, for appellee.**

**Geoffrey L. Stoll, for appellants.**

**PRESTON, Judge.**

{¶ 1} Defendants-appellants, Robert Lee, Malcolm Stall, and Michael Weese (collectively, "defendants"), appeal the Crawford County Court of Common Pleas judgment denying their joint motion to merge offenses as allied offenses of similar import. For the reasons that follow, we affirm the trial court's judgment as to case No. 3-10-13 (Weese), affirm the trial court's judgment as to case No. 3-10-11 (Lee), and affirm in part and reverse in part the trial court's judgment as to case No. 3-10-12 (Stall).

{¶ 2} This case concerns a home invasion that took place on October 18, 2009, at a residence in Galion, Ohio that was owned by an elderly couple, Kathleen and Sam Siclair. Specifically, at issue on this appeal is whether certain offenses arising out of the home invasion should have been merged because the offenses are allied offenses of similar import.

{¶ 3} The general facts of the case are stated as follows. Late in the evening on October 18, 2009, defendants Lee, Weese, and Stall went to the Siclairs' home with the purpose of stealing from the home approximately $40,000 in cash, which the defendants believed was hidden in a freezer in the Siclairs' basement. Defendants tried for approximately one hour to covertly gain entrance into the home, but discovered that all of the doors and windows were locked. During this time, Lee noticed that Mr. Siclair was asleep in one of the bedrooms, while Mrs. Siclair was sitting on the floor in the living room seemingly watching TV.

{¶ 4} Consequently, defendants decided to enter the residence by knocking on the door and forcing their way into the home.

{¶ 5} At approximately 11:00 p.m., Weese went to the back door and knocked on the door. Mrs. Siclair got up, went to answer the back door, and saw a young man (Weese) with a coat covering his mouth. Weese informed Mrs. Siclair that he had a question for her, at which point Weese pushed the door open with

such force that it knocked Mrs. Siclair to the ground, causing her to hit her head on the back of an end table and suffer a concussion. Additionally, Mrs. Siclair stated that after she was pushed and hit her head on the end table, she was also punched in the face, which resulted in a cut to her head that required seven stitches at the hospital.

{¶ 6} Upon gaining entry in the house, Lee and Weese proceeded to search the house for the $40,000 they believed was hidden in a freezer in the basement. Meanwhile, Stall dragged Mrs. Siclair from the porch into the kitchen and wrapped duct tape around her head to cover her mouth. Mrs. Siclair testified that while searching the house, defendants repeatedly demanded that she disclose the location of the money and drugs, and when she did not give them a location, she was hit with a closed fist. In addition, Mrs. Siclair testified to the difficulty she had breathing due to the duct tape, the pain from being struck repeatedly, along with the fact that she suffers from COPD (chronic obstructive pulmonary disease). During the entire home invasion, Mr. Siclair was asleep in a different room, and because of a severe hearing disability did not hear anything.

{¶ 7} Eventually, after cutting the telephone cords to the house, defendants left the home and took with them jewelry and drugs that they had found inside the Siclairs' house. Subsequent to defendants' departure, Mrs. Siclair crawled her

way to where her husband was sleeping, woke him up, and used a cell phone to call the police.

{¶ 8} On November 9, 2009, the Crawford County Grand Jury indicted all three defendants with the following charges:[1] aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree; aggravated robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree; and felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. Stall was additionally charged with kidnapping in violation of R.C. 2905.01(A)(3), a felony of the first degree. Lee was indicted in case No. 09-CR-0169 (appellate case No. 3-10-11), Stall was indicted in case No. 09-CR-0170 (appellate case No. 3-10-12), and Weese was indicted in case No. 09-CR-0179 (appellate case No. 3-10-13).

{¶ 9} Defendants were arraigned on November 16, 2009. Defendants filed a joint motion to continue their trials on January 8, 2010. Along with the motion to continue, the motion also requested that the trial court issue an order precluding convictions on the counts of aggravated robbery, felonious assault, and kidnapping. Defendants argued in their motion that pursuant to R.C. 2941.25, the felonious-assault and the kidnapping counts were allied offenses of similar import to the aggravated-robbery count, and thus, defendants could be convicted only on

---

[1] Two of the defendants were indicted on additional counts for actions committed separately from the October 2009 home invasion. Defendant Lee was also indicted on two additional counts, breaking and entering and aggravated robbery, with respect to separate events that had taken place in September 2009. Defendant Stall was also indicted on one unrelated count of possession of drugs.

the aggravated-robbery count. The state filed its response to defendants' motion on January 11, 2010, claiming that the issue of merger could be determined only at the sentencing phase of the trial.

{¶ 10} On January 11, 2010, the trial court issued its order, denying the portion of the motion that was seeking a continuance of the trial date. Thereafter, on January 21, 2010, defendants appeared before the trial court, entered pleas of guilty to the charges set forth in the indictments, and requested to reserve the right to argue the issue of merger at sentencing. Judgment entries of conviction were issued on February 1, 2010.

{¶ 11} On March 4, 2010, defendants filed their response to the state's memorandum in opposition on the merger issue. On that same date, the state filed its allied-offense brief, and on March 5, 2010, defendants filed their allied-offense brief.

{¶ 12} A hearing on the merger issue was held on March 5, 2010. Defendant Lee, Mrs. Siclair, and Detective Chad Filliater testified at the hearing. Following the presentation of the evidence, the trial court allowed defendants and the state time to present their written closing arguments. Defendants and the state filed their final briefs on March 15, 2010. Thereafter, on March 31, 2010, the trial court issued its ruling on the merger issues, denying the motion to merge the

offenses of felonious assault and kidnapping with the offense of aggravated robbery.

{¶ 13} Defendants were sentenced on April 5, 2010, as follows: on the aggravated-burglary offense, Lee, Weese, and Stall were all sentenced to ten years in prison; on the aggravated-robbery offense, Lee, Weese, and Stall were all sentenced to ten years in prison; on the felonious-assault offense, Lee, Weese, and Stall were all sentenced to eight years in prison; and as to Stall on the kidnapping offense, he was sentenced to ten years in prison. All of defendants' prison sentences, including the additional unrelated sentences, were ordered to be served consecutively.

{¶ 14} Defendants now appeal and raise only one assignment of error:

The trial court erred in failing to hold that offenses of aggravated robbery, felonious assault and kidnapping were allied offenses of similar import, requiring merger of the offenses for purposes of sentencing.

{¶ 15} In defendants' only assignment of error, they argue that the trial court erred when it failed to find that the offenses of aggravated robbery, felonious assault, and kidnapping were allied offenses of similar import, and as such, the offenses should have merged for purposes of sentencing.

{¶ 16} R.C. 2941.25 is Ohio's multiple-count statute. It provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

> indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 17}** In order to determine whether the trial court should have merged any of the offenses, we must apply the two-step analysis established by the Ohio Supreme Court. *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882, ¶ 10-13, citing *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. See also *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 18. First, the court must compare the elements of the crimes. "If the elements of the offenses correspond to such a degree that the commission of one will result in the commission of the other, the crimes are allied offenses of similar import." Id. at ¶ 19, citing *Blankenship* at 117. If the offenses are found to be allied offenses of similar import, then the court must proceed to the second step, which calls for reviewing the defendant's conduct in order to determine whether the defendant can be convicted of both offenses. "If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." *Brown* at ¶19, citing *Blankenship* at 117. Additionally, because this assignment of error presents

a question of law, our standard of review is de novo. *State v. Loomis*, 11th Dist. No. 2002-A-0102, 2005-Ohio-1103, ¶8, citing *State v. Ellenburg* (July 9, 1998), 4th Dist. No. 97CA597, at *3.

{¶ 18} We note that the law regarding allied offenses of similar import has been frequently addressed and discussed by the Ohio Supreme Court. In fact, regarding the first step in the analytical process, the Ohio Supreme Court has had to clarify its holding in *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, paragraph one of the syllabus, in which the court held that "[u]nder an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared *in the abstract*." (Emphasis sic.) Instead of considering the elements of the offenses within the context of the facts of the particular case, the Supreme Court found that comparing the elements in the abstract was "the more functional test." Id. at 636. In doing so, the Supreme Court in *Rance* effectively overruled its prior analytical framework established in *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 83, 549 N.E.2d 520, in which the court essentially compared the statutory elements of the offenses by reference to the particular facts alleged in the indictment. *Rance* at 637-640.

{¶ 19} However, after *Rance*, several courts were interpreting the holding in *Rance* as requiring a strict textual comparison of the elements of the offenses and were only aligning the elements of the compared offenses in determining whether

the compared offenses were allied offenses of similar import. As a result, the Ohio Supreme Court clarified *Rance* in *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, and held that "[i]n determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses *in the abstract* without considering the evidence in the case, but are not required to find an exact alignment of the elements." (Emphasis added.) Id. at paragraph one of the syllabus. Since then, the Supreme Court has consistently looked in the abstract at the elements of the crimes charged to determine whether they are allied offenses of similar import, and if so, then looked to the defendant's conduct in the particular case to determine whether the offenses were committed separately or with a separate animus. See *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 23-27 (determining that attempted murder pursuant to R.C. 2903.02(A) and felonious assault pursuant to R.C. 2903.11(A)(2) were allied offenses and that under the facts of the case were committed with the same animus); *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 29-33 (holding that it was plain error to sentence defendant for two counts of aggravated theft and two counts of theft that were allied offenses of similar import, even though defendant's sentences would remain the same length of time and despite defendant having agreed to the sentence); *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-

3323, 911 N.E.2d 882, ¶ 15-20 (holding that robbery under R.C. 2911.02(A)(2) and aggravated robbery under R.C. 2911.01(A)(1) are allied offenses because possession of a deadly weapon during a theft also constitutes a threat to inflict physical harm and that felonious assault under R.C. 2903.11(A)(1) and 2903.11(A)(2) are allied offenses); *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, ¶ 13-25 ("[w]hen analyzed in the abstract, the crime of kidnapping, defined by R.C. 2905.01(A)(2), and the crime of aggravated robbery, defined by R.C. 2911.01(A)(1), are allied offenses of similar import" since presence of a weapon that has been shown or used also forcibly restrains the liberty of another); *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 28-33 (holding that when offenses were analyzed in the abstract, the offense of possessing a controlled substance under R.C. 2925.11(A) and the offense of trafficking in a controlled substance under R.C. 2925.03(A)(1) were not allied offenses, but the offense of possessing a controlled substance under R.C. 2925.11(A) and the offense of trafficking in a controlled substance under R.C. 2925.03(A)(2) were allied offenses).

{¶ 20} With that stated, we will now consider the particular offenses that defendants claim are allied offenses of similar import. In this particular case, all three defendants were charged with aggravated burglary, aggravated robbery, and felonious assault, and only Stall was additionally charged with kidnapping.

However, we note that for purposes of this appeal, defendants have not alleged that the count of aggravated burglary should have merged with the counts of aggravated robbery, felonious assault, and kidnapping. Thus, we will only consider whether the offenses of aggravated robbery, felonious assault, and kidnapping should have merged for purposes of sentencing.

*Aggravated Robbery and Felonious Assault*

{¶ 21} Here, defendants pleaded guilty to aggravated robbery pursuant to R.C. 2911.01(A)(3), which states that "[n]o person, in attempting or committing a theft offense, * * * shall * * * [i]nflict, or attempt to inflict, serious physical harm on another." Additionally, defendants pleaded guilty to felonious assault as prescribed under R.C. 2903.11(A)(1), which states that "[n]o person shall knowingly * * * cause serious physical harm to another." When comparing the elements of the offenses in the abstract, it appears that the commission of the aggravated robbery by attempting or inflicting serious physical harm would necessarily result in the commission of a felonious assault, which is the infliction of serious physical harm. However, the state claims that the Ohio Supreme Court has already ruled that the offenses of aggravated robbery and felonious assault are not allied offenses of similar import. In *State v. Preston*, the Ohio Supreme Court determined whether the crimes of aggravated robbery and felonious assault were allied offenses of similar import and ultimately held that "[u]pon review of the

record, we find that the commission of the aggravated robbery did not automatically result in the commission of the felonious assault. Preston came into the market and committed the aggravated robbery. Jones then knocked the gun from Preston's hand and a struggle ensued. Preston retrieved his gun and committed a second crime, felonious assault, by pointing the gun at Jones and shooting him." (1986), 23 Ohio St.3d 64, 65-66, 491 N.E.2d 685. Since then, several other appellate courts have cited *Preston* for the general proposition that aggravated robbery and felonious assault are not allied offenses of similar import. *State v. Howell*, 8th Dist. No. 92827, 2010-Ohio-3403; *State v. Smith*, 2nd Dist. No. 08CA0060, 2009-Ohio-5048; *State v. James*, 12th Dist. No. CA2008-04-037, 2009-Ohio-1453; *State v. Dixon,* 4th Dist. No. 09CA3312, 2010-Ohio-5032; *State v. Allen*, 115 Ohio App.3d 642, 685 N.E.2d 1304 (7th Dist.); *State v. Jones* (Mar. 13, 1991), 9th Dist. No. 14582. However, while the state urges this court to follow the general proposition as stated in *Preston*, we are hesitant to do so for two reasons.

{¶ 22} First of all, the particular subsections of aggravated robbery and felonious assault analyzed by the Supreme Court in *Preston* differ from the subsections of aggravated robbery and felonious assault charged in this particular case. In *Preston*, the defendant was charged with aggravated robbery pursuant to R.C. 2911.01(A)(1) (having a deadly weapon on one's person while committing a

theft offense) and felonious assault pursuant to R.C. 2903.11(A)(2) (causing serious physical harm by means of a deadly weapon). 23 Ohio St.3d at 67 (Celebrezze, C.J., concurring). Here, defendants were charged with aggravated robbery pursuant to R.C. 2911.01(A)(3) (inflicting serious physical harm while committing a theft offense) and felonious assault pursuant to R.C. 2903.11(A)(1) (causing serious physical harm). When considering the elements of aggravated robbery pursuant to R.C. 2911.01(A)(1) and felonious assault pursuant to R.C. 2903.11(A)(2) in the abstract, we acknowledge that the two charges are not allied offenses of similar import, since aggravated robbery requires the mere possession of a deadly weapon, while felonious assault requires the actual use of a deadly weapon to cause or attempt to cause serious physical harm to another. *State v. Gonzalez* (Mar. 15, 2001), 8th Dist. No. 77338, at *7-8 (recognizing that *Preston* looked only to the facts of the case when determining offenses were not allied offenses, but after looking at the elements the appellate court held that aggravated robbery required only possession of deadly weapon while felonious assault required actual use of a deadly weapon to cause physical harm). Even the state acknowledges that *Preston* did not deal with the same subsections for aggravated robbery and felonious assault as were charged in this particular case; nevertheless, the state points to a Second District case that applied the *Preston* holding to the exact same charges as in the case sub judice. See *State v. Smith*, 2nd Dist. No.

08CA0060, 2009-Ohio-5048, ¶20.  In *Smith*, while citing the Supreme Court's opinion in *Preston*, the Second District held that aggravated robbery pursuant to R.C. 2911.01(A)(3) and felonious assault pursuant to R.C. 2903.11(A)(1) and (2) were not allied offenses of similar import.  Id.

{¶ 23} While the charges in *Smith* were identical to the charges in the case sub judice, we still are hesitant to follow the general proposition in *Preston* and cited by *Smith* because second, and most importantly, we note that the Supreme Court's analytical framework in *Preston* differs from the analytical framework it now uses and has significantly discussed in its recent cases involving allied offenses of similar import.  Importantly, as defendants point out in their reply brief, *Preston* was decided based on the analytical framework that was overruled by the Supreme Court in *Rance*.  See *Rance*, 85 Ohio St.3d 632, paragraph one of syllabus.  Specifically, in *Preston*, the Ohio Supreme Court found that "upon review of the record," the offenses of aggravated robbery and felonious assault did not automatically result in the commission of the other.  23 Ohio St.3d at 65-66.  This was because based on the *facts of the case* Jones had separately committed the aggravated robbery and then later committed the felonious assault.  Id.  However, the approach used by the Supreme Court in *Preston* is not the same approach it has recently used; rather, the court has made it clear that the first step in the allied-offenses analysis is to look at the elements of the offenses charged *in*

*the abstract.* Compare *Rance* at paragraph one of the syllabus with *Preston*, 23 Ohio St.3d at 65-66. Essentially, the Supreme Court has required that we first compare the elements of the offenses in the abstract, that is, by the elements established by the General Assembly, and not based on the facts of each case. *Rance* at 639.

{¶ 24} Consequently, for the above two reasons, we are hesitant to rely on the Supreme Court's holding in *Preston* and the subsequent appellate cases that have cited it for the general proposition that aggravated robbery and felonious assault are not allied offenses of similar import. However, even assuming arguendo that aggravated robbery pursuant to R.C. 2911.01(A)(3) and felonious assault pursuant to R.C. 2903.11(A)(1) are allied offenses of similar import, when considering the second step in the allied-offenses analysis, under the particular facts of this case, we find that the aggravated robbery and felonious assault were committed separately and with separate animus.

{¶ 25} Again, "[i]f the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, at ¶19, citing *Blankenship*, 38 Ohio St.3d at 117. Here, based on the evidence presented at the hearing, we find that there was evidence that the aggravated robbery and the felonious assault were committed separately and were committed

with separate animus. In particular, the felonious assault was committed when, after being pushed to the ground and hitting her head on the end table, Mrs. Siclair was then punched in her face with such force that it caused her to bleed and required seven stitches at the hospital. The facts indicate that the felonious assault was committed with the purpose to debilitate Mrs. Siclair and render her immobile. On the other hand, the aggravated robbery was completed when, after being dragged into the kitchen, Mrs. Siclair was then punched several times with a closed fist while the defendants demanded to know where the money, drugs, and her purse were located. Again, the facts indicate that the purpose of hitting her several times in the kitchen was to locate and obtain money and/or drugs, in other words, the theft portion of the aggravated-robbery offense.[2]

{¶ 26} Therefore, we ultimately find that because the offenses were committed separately and with separate animus, the trial court did not err in sentencing the defendants separately on the aggravated-robbery and felonious-assault counts.

*Kidnapping and Aggravated Robbery*

---

[2] In its brief, the state argues that under the Ohio Supreme Court's decision in *State v. Cooper*, if we find that the acts were committed separately or with separate animus, then we need not address at all whether the offenses are allied offenses of similar import. 104 Ohio St.3d 293, 2004-Ohio-6553, 819 N.E.2d 657, ¶ 17, 29-30. While we acknowledge that under *Cooper's* holding, our allied-offense discussion may have been unnecessary given the ultimate result, we believe it was still necessary to clarify our position with respect to the aggravated-robbery and the felonious-assault offenses charged in this particular case, especially in light of the Supreme Court's recent opinions regarding allied offenses of similar import.

{¶ 27} With respect to Stall, we must consider whether the offenses of kidnapping as defined under R.C. 2905.01(A)(3) and aggravated robbery as defined under R.C. 2911.01(A)(3) are allied offenses of similar import. R.C. 2905.01(A)(3) states that "[n]o person, by force, or deception * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o terrorize, or to inflict serious physical harm on the victim or another." Moreover, as stated above, aggravated robbery pursuant to R.C. 2911.01(A)(3) states that "[n]o person, in attempting or committing a theft offense, * * * shall * * * [i]nflict, or attempt to inflict, serious physical harm on another."

{¶ 28} Recently, the Ohio Supreme Court determined that kidnapping pursuant to R.C. 2905.01(A)(2) and aggravated robbery pursuant to R.C. 2911.01(A)(1) were allied offenses of similar import. *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, ¶25. While holding that the two offenses were so similar that the commission of one necessarily resulted in the commission of the other, the court also noted that its holding in *Winn* was consistent with "30 years of precedent." Id. at ¶ 22, citing *State v. Logan* (1979), 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (noting *Logan* "has been considered authority for the proposition that kidnapping and robbery are allied offenses of similar import"). See also *State v. Jenkins* (1984), 15 Ohio St.3d 164, 198, 473

N.E.2d 264, fn. 29 (pre-*Rance* case, citing *Logan* for the proposition that "implicit within every robbery (and aggravated robbery) is a kidnapping"); *State v. Fears* (1999), 86 Ohio St.3d 329, 344, 715 N.E.2d 136 (unless offenses were committed with separate animus, specifications for kidnapping merge with specifications for aggravated robbery); *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶204, citing *Jenkins*, 15 Ohio St.3d at 198 ("kidnapping is implicit within every aggravated robbery"); *Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, at ¶ 18, 25, 886 N.E.2d 181. Consequently, we must now consider Stall's conduct to determine whether he can be convicted of both kidnapping and aggravated robbery.

{¶ 29} The Supreme Court has also discussed the "separate animus" analysis with respect to kidnapping charges and has established the following guidelines in determining whether kidnapping and another offense of the same or similar kind are committed with a separate animus:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345, at syllabus. As a result, "when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime." *Fears*, 86 Ohio St.3d at 344, citing *Logan* at syllabus.

{¶ 30} In this case, we find that the facts indicate that the restraint and movement of Mrs. Siclair were merely incidental to the underlying crime of aggravated robbery. The facts in the record illustrate that after getting punched in the face (which was the commission of the felonious assault as discussed above), Mrs. Siclair was dragged by Stall over a step into the kitchen, at which point, Stall then duct-taped her mouth. After taping her mouth, defendants began asking her for the location of the money and drugs, and when Mrs. Siclair would not respond, she was hit with a closed fist. Based on these facts, we fail to see how Stall's actions that are claimed to be "kidnapping" were anything other than actions in furtherance of the aggravated robbery.

{¶ 31} Nevertheless, the state relies on the fact that Mrs. Siclair was dragged over the step into the kitchen to support its claim that the kidnapping offense was committed separately from the aggravated-robbery offense. However, in *Logan*, the Supreme Court concluded that forcing the victim into an alley and down a flight of stairs prior to raping her was merely incidental to the separate underlying crime of rape, and thus, the charge of kidnapping should have merged

- 20 -

with the charge of rape. 60 Ohio St.2d at 132-136. In particular, the court found that "[i]n the instant case, the restraint and movement of the victim had no significance apart from facilitating the rape. The detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape." Id. at 135. If moving a victim into an alley and down a flight of stairs did not give rise to a finding that the kidnapping offense was committed separately at that point in time, we fail to see how moving Mrs. Siclair into another room can, by itself, justify a finding that the kidnapping offense was likewise committed at that point in time. See *Logan*, 60 Ohio St.2d at 132-136. There is nothing in the record that indicates that Mrs. Siclair was moved from the residence to another location; rather, she was simply moved from one room to another.

{¶ 32} Despite the minimal movement of Mrs. Siclair, the state also claims that Mrs. Siclair was subjected to a greater risk of harm beyond that already created by the factors involved in the commission of the aggravated-robbery offense when Stall duct-taped her mouth, which caused her to have difficulty breathing. However, given the fact that defendants began repeatedly asking her for the location of the money *after* Mrs. Siclair's mouth was duct-taped, we believe that taping Mrs. Siclair's mouth only furthered defendants' attempts at intimidating her into revealing the location of the money, and thus had no

significance apart from facilitating the aggravated robbery. While we do not wish to minimize the seriousness of the defendants' actions or the effect that their actions had on Mrs. Siclair, we simply cannot find that Mrs. Siclair was subjected to a greater risk of harm beyond that already created by the factors involved in the commission of the aggravated robbery. As the Supreme Court stated in *Logan*, "when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery." 60 Ohio St.2d at 131, 14 O.O.3d 373, 397 N.E.2d 1345. "[W]ithout more, there exists a single animus, and R.C. 2941.25 prohibits convictions for both offenses." Id. at 132. Here, the only restraint on Mrs. Siclair was when Stall placed duct tape around her head to cover her mouth. There is nothing in the record to indicate that her feet or arms were also bound together. In fact, as soon as defendants left the house, Mrs. Siclair was able to freely move, and did so when she went to where husband was sleeping, woke him up, and called the police. Thus, we find that the facts in this case only indicate that the restraint and movement of Mrs. Siclair were merely incidental to the underlying crime of aggravated robbery.

{¶ 33} Overall, based on the evidence presented at the hearing, and in light of the Supreme Court's decision in *Logan*, we cannot find that the kidnapping was committed separately or with separate animus from the aggravated robbery. Therefore, while we find that the trial court correctly sentenced Stall separately

with respect to the aggravated robbery and felonious assault, we find that Stall's kidnapping sentence should have merged with his aggravated-robbery sentence.

{¶ 34} Defendants' only assignment of error is, therefore, sustained in part and overruled in part.

{¶ 35} Having found no error prejudicial to the appellants Lee and Weese herein in the particulars assigned and argued with respect to appellants' assignment of error, we affirm the judgments of the trial court in case Nos. 3-10-11 and 3-10-13. However, having found partial error prejudicial to appellant Stall herein in the particulars assigned and argued with respect to appellants' assignment of error, we affirm in part and reverse in part the judgment of the trial court in case No. 3-10-12 and remand for further proceedings consistent with this opinion.

Judgment accordingly.

WILLAMOWSKI, P.J., and ROGERS, J., concur.

_____

ROGERS, J., concurring separately.

{¶36} I concur fully in the majority opinion and conclusion that Stall's kidnapping sentence should have merged with his aggravated-robbery sentence in case 3-10-12. Additionally, I concur with the majority's conclusion in cases 3-10-11, 3-10-12, and 3-10-13 that the offenses of felonious assault and aggravated

- 23 -

robbery were committed separately and with a separate animus; however, I wish to elaborate on the majority's analysis in reaching this conclusion.

{¶37} The majority finds that the defendants' acts upon entering the victim's residence of pushing her to the ground, causing her to hit her head, and punching her in the face constituted the offense of felonious assault and that the felonious assault was committed with the purpose to debilitate the victim and render her immobile. Additionally, the majority finds that the defendants' acts after dragging the victim into her kitchen of punching her several more times while demanding to know where items were in the residence constituted the offense of aggravated robbery and that the purpose of these punches was to locate and obtain the items. I believe that an additional theory and additional case law support the finding of a separate animus for the felonious assault and aggravated robbery.

{¶38} This court has previously found that in determining whether a separate animus exists for two offenses, a court may examine "case-specific factors such as whether the defendant at some point broke 'a temporal continuum started by his initial act,' [or] whether facts appear in the record that 'distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed.'" *State v. Roberts*, 180 Ohio App.3d 666, 2009-Ohio-298, ¶14, quoting *State v. Williams*,

8th Dist. No. 89726, 2008-Ohio-5286, ¶37; *State v. Hines*, 8th Dist. No. 90125, 2008-Ohio-4236, ¶48. See also *State v. Cronin*, 6th Dist. No. S-09-032, 2010-Ohio-4717, ¶45; *State v. Helms*, 7th Dist. No. 08 MA 199, 2010-Ohio-4872, ¶52; *State v. Nuh*, 10th Dist. No. 10AP-31, 2010-Ohio-4740, ¶16; *Thompkins v. Ross* (S.D.Ohio 2009), 2009 WL 4842247, fn. 1.

{¶39} Here, I would find that the defendants' act of dragging the victim to another area of her home constituted a break in the temporal continuum or line of distinction and that the defendants' resumption of punching the victim following this break would constitute a separate and distinct offense. Consequently, I would find that a separate animus existed for the felonious assault and aggravated robbery on this theory as well and would affirm the defendants' convictions for these separate offenses on that basis.