[Cite as *State v. Thomas*, 197 Ohio App.3d 176, 2011-Ohio-6073.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 96146 and 96798**

## THE STATE OF OHIO,

APPELLEE,

v.

## THOMAS,

APPELLANT.

**JUDGMENT:
NO. 96146 AFFIRMED IN PART,
VACATED IN PART, REMANDED;**

**NO. 96798 AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535943

**BEFORE:** Rocco, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 23, 2011

**ATTORNEYS:**

William D. Mason, Cuyahoga County Prosecuting Attorney, and Jesse W. Canonico and T. Allan Regas, Assistant Prosecuting Attorneys, for appellee.

Rick Ferrara, for appellant.

KENNETH A. ROCCO, Judge.

**{¶ 1}** After entering pleas of no contest to 30 sexual offenses, six counts of endangering children, and one count of possession of criminal tools, defendant-appellant, Christopher Thomas, appeals from his convictions, the sentence imposed, and the trial court's denial of his motion to withdraw his pleas.

**{¶ 2}** In App. No. 96146, Thomas presents seven assignments of error. As to his sentence, he claims that it was disproportionately severe, he was sentenced for allied offenses, and the trial court neither adequately justified it nor provided findings to support it. As to his pleas, he claims that they were invalid because he was not informed that some of his offenses should be considered allied and because the trial court did not state the maximum penalty he faced. Thomas also claims that his trial counsel rendered ineffective assistance for failing to challenge the state's version of the facts underlying the charges.

**{¶ 3}** In App. No. 96798, Thomas presents one assignment of error. He asserts that the trial court abused its discretion in denying without conducting a hearing his postsentence motion to withdraw his pleas. He bases this assertion on the same claims he makes in arguing that his pleas were invalid and on his claim that his trial counsel rendered ineffective assistance. Because the record reflects that the trial court lacked jurisdiction to entertain Thomas's motion to withdraw his plea, however, his assignment of error is overruled.

{¶ 4} Upon a review of the record, this court cannot find any error in the trial court's acceptance of Thomas's pleas or in his trial counsel's performance. Thomas's sentence, however, must be reversed. The trial court imposed sentences for some allied offenses and abused its discretion when it imposed a sentence that totaled 93 years for Thomas's convictions in this case.

{¶ 5} No dispute exists with respect to the facts that Thomas's convictions in this case result from his inappropriate relationships with two of his students while he was employed as a teacher at a middle school. The two victims were females, aged 14 and 13. Thomas had a sexual encounter with the younger girl. He also sent sexually explicit electronic messages to the girls and convinced the girls to take sexually explicit photographs of themselves and to send those photographs to his cell phone. He then transferred the images to his computer.

{¶ 6} Thomas originally was indicted in this case on 39 counts. Since the state subsequently dismissed Counts 2 and 3, this court will not address them. All the counts were grouped in terms of victims and dates.

{¶ 7} Count 1 charged Thomas with committing sexual battery on the 13-year-old sometime between June 11, 2008, and November 10, 2009. Counts 4 through 15 and Counts 23 through 32 charged him with the illegal use of a minor in nudity-oriented material. Counts 16 through 22 charged him with importuning. Counts 33 through 38 charged him with endangering children. Count 39 charged him with possession of criminal tools, to wit, cell phones and computers.

{¶ 8} Based upon forensic analysis of the electronic devices, the offenses occurred on the following specific dates:

Counts 4 and 37 - June 11, 2008.

Counts 5 and 38 - June 13, 2008.

Counts 23 and 33 - April 6, 2009.

Counts 6, 8, 9, 24, 25, and 34 - April 7, 2009.

Counts 10, 11, 12, 26, 27, and 28 - April 8, 2009.

Count 29 - April 9, 2009.

Count 30 - April 10, 2009.

Counts 13 and 14 - April 15, 2009.

Count 31 and 35 - May 3, 2009.

Counts 7, 15, 32, and 36 - May 4, 2009.

Counts 16, 17, 18, 19, 20, 21, and 22 - July 3, 2008; September 21, 2008; September 24, 2008; November 13, 2008; December 18, 2008; July 24, 2009; and August 3, 2009.

{¶ 9} Thomas's case proceeded to a hearing on October 20, 2010. After the trial court dismissed Counts 2 and 3, Thomas's attorney stated that his client had decided to plead no contest to the indictment.

{¶ 10} The prosecutor outlined the charges against Thomas and the degree of the offenses, then set forth the potential penalties for those offenses; the prosecutor indicated

that there were "28 F-2s, one F-3, and eight felony fives." He made no mention of the possibility of consecutive terms.

{¶ 11} The trial court thereupon held a colloquy with Thomas, informing him of the constitutional rights he would be waiving in entering his plea and the potential penalty for each degree of felony. In addressing Thomas, the trial court also failed to mention that terms could be imposed consecutively.

{¶ 12} Before finding Thomas guilty of the offenses, the trial court asked the prosecutor to set forth the factual basis for Thomas's plea. The prosecutor stated that Thomas and the younger victim had "exchanged sexual text messages and nude photographs" and that Thomas "e-mailed nude photographs of the minor victim from his Blackberry to his computer ten times." Thomas also had sexual contact with the girl. The prosecutor further stated that Thomas also admitted twice "swapping nude photographs" with the other victim. Thomas saved the victims' photos on his laptop computer's hard drive, and his text messages and e-mails demonstrated that he was "soliciting both minor female victims for sexual activity, as well as to send him naked photographs of themselves."

{¶ 13} The trial court obtained a presentence report and held the sentencing hearing on November 17, 2010. By that time, the prosecutor had filed a sentencing memorandum for the court's consideration.

{¶ 14} When the sentencing hearing commenced, Thomas and his mother each provided a lengthy statement, Thomas's psychotherapist spoke on his behalf, and defense counsel reminded the court that Thomas had taken responsibility for his crimes.

{¶ 15} When the prosecutor addressed the court, he reiterated the facts of the case. One of the victims' parents then made a statement to the court, and the trial court viewed a videotaped statement made by the younger victim. Finally, the prosecutor declared that "these were separate, distinct crimes, every last one of them" and that Thomas deserved severe punishment.

{¶ 16} The trial court stated its intent to sentence Thomas "based upon the crimes and the date." Although the court became confused in setting forth the counts for which it imposed sentence, the court proceeded to sentence Thomas to maximum and concurrent terms for offenses that occurred on the same date, with the term imposed for each date to run consecutively. The prosecutor asked for a total, and the trial court responded, "153 years." In its journal entry of sentence, however, the court arrived at a total of 93 years, which is the correct total.

{¶ 17} Thomas presents the following seven assignments of error in App. No. 96146.

{¶ 18} "I. The trial court abused its discretion when it sentenced Appellant to 93 years in prison, because the sentence was grossly disproportionate to that imposed for other, similar offenses.

{¶ 19} "II.   The trial court acted contrary to law by imposing Appellant's sentence without applying Ohio's allied offense statute.

{¶ 20} "III.   Appellant was denied due process because he could not have entered his plea knowingly or intelligently due to recent interpretation of state law.

{¶ 21} "IV.   The trial court denied Appellant due process of law under the Fourteenth Amendment because it failed to place substantial findings on record to support its sentence.

{¶ 22} "V.   The trial court abused its discretion when it accepted Appellant's plea of no contest and did not state the maximum penalty.

{¶ 23} "VI.   The trial court abused its discretion when it accepted Appellant's plea of no contest in the face of allegations insufficient as a matter of law to warrant the charges.

{¶ 24} "VII.   Defense counsel was ineffective because it [sic] failed to recognize that insufficient evidence supported the charges, allowed sentencing on higher counts than those possible under the law, and thus prejudiced Appellant."

{¶ 25} Thomas's assignments of error can be grouped into separate categories. This court first will address those that relate to his plea.

{¶ 26} Thomas argues in his third and fifth assignments of error that his plea was invalid because (1) the record reflects that he was not informed that some of the crimes to which he had pleaded no contest constituted allied offenses and (2) the trial court failed to

inform him that it could impose consecutive terms. This court is not persuaded by his arguments.

**{¶ 27}** Because a criminal defendant gives up certain constitutional rights when changing his plea of not guilty, the trial court cannot accept the change unless the defendant is fully informed of the consequences. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. A guilty or no-contest plea is invalid if it was not knowingly, intelligently, and voluntarily made. *Id.,* citing *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450.

**{¶ 28}** A trial court, therefore, must engage the defendant in a plea colloquy before accepting the plea. *Clark* at ¶ 26, citing *State v. Ballard* (1981), 66 Ohio St.2d 473, 423 N.E.2d 115, paragraph one of the syllabus; see also Crim.R. 11(C). "It follows that, in conducting this colloquy, the trial judge must convey accurate information to the defendant so that the defendant can understand the consequences of his or her decision and enter a valid plea." *Clark*.

**{¶ 29}** A trial court must comply with the mandates of Crim.R. 11(C)(2) before accepting a change of a not-guilty plea to one of no contest. Pursuant to this rule, the court should not have accepted Thomas's no-contest plea unless it determined, inter alia, that he was voluntarily entering the plea with an understanding of the maximum penalty he faced. *Id.* at ¶ 27.

**{¶ 30}** Crim.R. 11(B)(2) describes the effect of a no-contest plea as follows:

**{¶ 31}** "The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."

**{¶ 32}** Thomas presents no argument that the trial court failed to inform him of the effect of a no-contest plea as required by Crim.R. 11(C)(2)(b); cf., *State v. Howell*, Mahoning App. No. 04 MA 31, 2005-Ohio-2927, 2005 WL 1385713. Rather, his argument focuses on the trial court's compliance with Crim.R. 11(C)(2)(a) and whether he understood the maximum penalty involved.

**{¶ 33}** The defendant's right to be informed of the maximum possible penalty is a nonconstitutional right. *Id.* Therefore, a substantial-compliance rule applies. *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31. Under this standard, the plea is valid if the totality of the circumstances indicates that the defendant subjectively understood the implications of his plea. *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.

**{¶ 34}** If the trial judge partially complied with its duty to inform the defendant of the maximum penalty involved, the plea may be vacated only if the defendant demonstrates a prejudicial effect. *Id.* Prejudicial effect is established if the defendant can demonstrate that he would not have entered the plea had the trial court literally complied with Crim.R. 11(C)(2). *Id.*

**{¶ 35}** Thomas initially argues that his plea should be vacated because he did not understand that some of his offenses could be considered "allied" pursuant to R.C. 2941.25(A). His argument has three flaws.

**{¶ 36}** The first is the fact that Crim.R. 11(C)(2) contains no requirement for the court to present such information to the defendant. The second is that the trial court was nevertheless required to convict him of any allied offenses.

**{¶ 37}** In *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph three of the syllabus, the Supreme Court noted:

**{¶ 38}** "Because R.C. 2941.25(A) protects a defendant only from being punished for allied offenses, the *determination of the defendant's guilt* for committing allied offenses *remains intact*, both before and after the merger of allied offenses for sentencing." (Emphasis added.)

**{¶ 39}** The foregoing applies because Crim.R. 32(C) states that "[a] judgment of conviction shall set forth the plea, the verdict or findings, and the sentence." In *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, the Supreme Court held that the requirements of Crim.R. 32(C) are jurisdictional and that the trial court must separately dispose of each count in the indictment. *State v. Waters*, Cuyahoga App. No. 85691, 2005-Ohio-5137, 2005 WL 2386477; *State v. Cooper*, Cuyahoga App. No. 84716, 2005-Ohio-754, 2005 WL 428599.

**{¶ 40}** Thus, this court stated as follows in *State v. White*, Cuyahoga App. No. 92972, 2010-Ohio-2342, 2010 WL 2106092, ¶ 61-62:

**{¶ 41}** "[M]erger * * * implies that *a sentence is announced for the allied offense but literally merged into another offense so that the defendant serves a single term.* This conclusion is consistent with the supreme court's finding that the *imposition of a concurrent sentence for an allied offense causes prejudice* because it constitutes a second conviction in violation of R.C. 2941.25. See *State v. Underwood*, 2010-Ohio-1, at ¶ 31, [124 Ohio St.3d 365, 922 N.E.2d 923] * * *.

**{¶ 42}** "When there has been a guilty finding on an allied offense, the sentencing judge must comply with Crim.R. 32(C) by announcing a sentence on all counts for which the defendant has been found guilty, including the allied offense. * * *

**{¶ 43}** "By announcing a sentence for the allied offense, the court will comply with Crim.R. 32(C). By merging the sentence for the non-elected allied offense into the elected offense, the court will comply with R.C. 2941.25." (Emphasis added.)

**{¶ 44}** The foregoing analysis also demonstrates the third flaw in Thomas's argument. Even if the court were required to address the allied-offense issue during the plea hearing, if it had done so, Thomas would have had *more* of an incentive to change his not-guilty plea. *Howell*, ¶ 17. Thus, Thomas cannot demonstrate that any prejudice resulted from the trial court's failure. His third assignment of error, therefore, is overruled.

**{¶ 45}** As to the argument Thomas presents in his fifth assignment of error, i.e., that his plea is invalid because the trial court failed to inform him that his sentences could be imposed consecutively, his argument is rejected based upon *State v. Johnson* (1988),

40 Ohio St.3d 130, 532 N.E.2d 1295. The Ohio Supreme Court held in *Johnson* that there is no requirement that a defendant be told the maximum total of the sentences he faces, or that the sentence could be imposed consecutively, in order for the plea to be voluntary.

{¶ 46} Since Crim.R. 11(C) "speaks in the singular," the phrase "maximum penalty" that is required to be explained in Crim.R. 11(C)(2)(a) refers to a single crime rather than the total of all sentences. *Id.* In this case, Thomas's responses to the trial court's questions indicated that he subjectively understood the consequences of his plea. Consequently, his fifth assignment of error also is overruled.

{¶ 47} Thomas further argues in his sixth assignment of error that the trial court improperly accepted his pleas to the counts that charged him with violating R.C. 2907.323(A)(1)[1] because the state's recitation of the facts failed to establish that he either took the photographs at issue or "transferred" any "nudity oriented material." In support of his argument, Thomas cites *United States v. Hecht* (C.A.4, 2006), 470 F.3d 177, and *United States v. Probel* (C.A. 11, 2000), 214 F.3d 1285.

{¶ 48} However, those authorities are not quite on point, since the courts interpreted the word "distribution," rather than the word, "transfer." R.C. 2907.323 does not define the word "transfer"; therefore, this court must apply the ordinary meaning.

---

[1]R.C. 2907.323 provides:
"(A) No person shall do any of the following:
"(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity * * *."

{¶ 49} In Webster's New Collegiate Dictionary (1977), the first definition listed for "transfer" is "to convey from one person, place, or situation to another." According to the prosecutor's statement of the facts, Thomas sent the photographs from his Blackberry to his computer. This action falls within the ordinary definition of the word "transfer." See, e.g., *State v. Anderson*, Washington App. No. 03CA3, 2004-Ohio-1033, 2004 WL 413273.

{¶ 50} In any event, Thomas's plea of no contest had the effect of admitting the truth of the facts alleged in the indictment. Crim.R. 11(B)(2). Consequently, Thomas's sixth assignment of error also is overruled.

{¶ 51} Thomas's first, second, fourth, and seventh assignments of error all challenge his sentence. His second assignment of error must be addressed first.

{¶ 52} Thomas argues that some of his convictions required merger pursuant to R.C. 2941.25 and the recent decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. Based upon the record, this court agrees.

{¶ 53} The *Johnson* court held that instead of comparing the elements of the crimes in the abstract, courts must consider the defendant's conduct. *Johnson* at syllabus. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Id.,* quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting).

{¶ 54} In this case, the state charged Thomas with committing several offenses on certain days. The trial court convicted Thomas based upon the charges and the prosecutor's declaration, rather than making the necessary inquiry, and then imposed sentences consecutively for each crime. *State v. Corrao*, Cuyahoga App. No. 95167, 2011-Ohio-2517, 2011 WL 2112721.

{¶ 55} However, Thomas's actions in soliciting and transferring the photographs of the two victims were the same actions that led to the charges of child endangering. *State v. Johnson*, Cuyahoga App. No. 94813, 2011-Ohio-1919, 2011 WL 1582958; cf., *State v. LaPrairie*, Greene App. No. 2010CA-0009, 2011-Ohio-2184, 2011 WL 1753195.

{¶ 56} The following counts, therefore, required merger: Counts 37 and 4; Counts 38 and 5; Counts 33 and 23; Counts 34 and either 6, 8, 9, 24, or 25; Counts 35 and 31; and Counts 36 and either 7, 15, or 32.

{¶ 57} Thomas's convictions and sentences for endangering children must be vacated, and this cause must be remanded for the state to make its elections and for a resentencing hearing pursuant to *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923. Thomas's second assignment of error is sustained.

{¶ 58} In light of this disposition, it would be premature for this court to address Thomas's first assignment of error, in which he argues that his 93-year sentence for his convictions was excessive.[2] This court cannot presume which offenses the state will

---

[2] Thomas objected to the length of his sentence in the trial court. *State v. Edwards*, Cuyahoga App. No. 89191, 2007-Ohio-6068, 2007 WL 3377209, ¶ 11.

elect and cannot assume that the trial court will fail to consider the purposes and principles of sentencing at Thomas's resentencing hearing. *State v. Jones*, Montgomery App. No. 23926, 2011-Ohio-1984, 2011 WL 1591285, ¶ 38-54; cf. *Johnson; Corrao*. But see *Clark*, ¶ 25: "The benefit to a defendant of agreeing to plead guilty is the elimination of the risk of receiving a longer sentence after trial." Thus, Thomas's first assignment of error, at this juncture, is moot. App.R. 12(A)(1)(c).

{¶ 59} However, the argument Thomas raises in his fourth assignment of error is rejected. He contends that the trial court's failure to make findings to support the sentence it imposed upon him violates the Fourteenth Amendment.

{¶ 60} The Ohio Supreme Court recently considered the issue Thomas raises in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768. The Supreme Court concluded that despite the decision in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, "trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences." In light of *Hodge*, this court overrules Thomas's fourth assignment of error.

{¶ 61} Thomas argues in his seventh assignment of error that his trial counsel provided ineffective assistance. He bases this argument mainly on the one he presented in his sixth assignment of error, which this court overruled. He further argues that his trial counsel permitted him to enter no-contest pleas to higher-degree violations of R.C. 2907.323 than the state could prove.

**{¶ 62}** In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, a defendant must show not only that the attorney made errors so serious that he was not functioning as counsel, as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive defendant of a fair and reliable trial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶ 63}** There are many ways to provide effective assistance in any given case; therefore, scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.;* see also *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. Counsel will not be deemed ineffective for failing to raise futile challenges. *State v. Leonard*, Cuyahoga App. No. 93496, 2010-Ohio-3601, 2010 WL 3036451, ¶ 27.

**{¶ 64}** In this case, the prosecutor's recitation of the facts showed two things: (1) Thomas solicited the photographs the victims provided to him on his Blackberry device and (2) he then sent those photographs to his laptop computer. These actions fell within the common understanding of conduct prohibited by R.C. 2907.323(A)(1).

**{¶ 65}** Under these circumstances, trial counsel had no reason to challenge the indictment. Thomas, therefore, cannot demonstrate that counsel fell below an objective standard of reasonable representation. *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶ 66}** His seventh assignment of error, accordingly, is overruled.

{¶ 67} In App. No. 96798, Thomas presents only the following assignment of error:

{¶ 68} "The trial court abused its discretion when it denied Appellant's motion to withdraw its [sic] plea of no contest."

{¶ 69} On the same grounds he asserted in his challenge to his pleas and sentences as presented in App. No. 96146, Thomas argues that the trial court should have granted his postsentence motion to withdraw his pleas. This argument is rejected.

{¶ 70} Thomas filed his notice of appeal in App. No. 96146 on December 9, 2010. He filed his motion to withdraw his pleas in the trial court on April 8, 2011, while his appeal of his convictions and sentences already was pending.

{¶ 71} "Once an appeal is taken, the trial court is divested of jurisdiction until the case is remanded to it by the appellate court, except where the retention of jurisdiction is not inconsistent with that of the appellate court to review, affirm, modify, or reverse the order from which the appeal is perfected." *State v. Abboud*, Cuyahoga App. Nos. 87660 and 88078, 2006-Ohio-6587, 2006 WL 3635311, ¶ 11, citing *State v. Taogaga*, Cuyahoga App. No. 79845, 2002-Ohio-5062, 2002 WL 31122774, at ¶ 18, and *Stewart v. Zone Cab of Cleveland* (Jan. 31, 2002), Cuyahoga App. No. 79317, 2002 WL 127367.

{¶ 72} Since a motion to withdraw a plea that led to a conviction is inconsistent with a notice of appeal of the conviction, the trial court lacked jurisdiction to grant Thomas's motion. *Id.,* cf., *State v. Christinger,* Cuyahoga App. No. 95109,

2010-Ohio-6192, 2010 WL 5239179. The trial court, therefore, committed no error in denying his motion.

**{¶ 73}** Thomas's sole assignment of error in App. No. 96798 is overruled. The trial court's order in that appeal is affirmed.

**{¶ 74}** In App. No. 96146, Thomas's convictions and sentences are affirmed in part and vacated in part, and this cause is remanded for a resentencing hearing pursuant to *Underwood*.

Judgment accordingly.

STEWART, P.J., concurs.

GALLAGHER, J., concurs in part and dissents in part.

SEAN C. GALLAGHER, Judge, concurring in part and dissenting in part:

**{¶ 75}** I respectfully concur in part and dissent in part from the majority opinion.

**{¶ 76}** Though I concur in much of the majority decision, I believe a closer analysis is required of the allied-offense issue and Thomas's lengthy cumulative sentence.

**{¶ 77}** Among other charges, Thomas was convicted on numerous counts of illegal use of a minor in nudity-oriented material (Counts 4 though 15 and Counts 23 through 32) and endangering children (Counts 33 through 38). These charges stem from conduct in which Thomas sent electronic messages to two female students and enticed them to send sexually explicit photographs of themselves to his cell phone. He then transferred the

images to his computer for his personal gratification. In all, there were 12 photographs created of the victims.

{¶ 78} In order to determine whether offenses are allied offenses of similar import and subject to merger, a court is required to engage in a two-step analysis. The first step considers whether it is possible to commit the offenses by the same conduct: "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." (Emphasis sic.) *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 48. The second step looks to whether the offenses were committed by the same act and animus: "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Id.* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50. "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* at ¶ 50. Summarily stated, "When 'in substance and effect but one offense has been committed,' the defendant may be convicted of only one offense." *Id.* at ¶ 43, quoting *State v. Botta* (1971), 27 Ohio St.2d 196, 203, 271 N.E.2d 776.

**{¶ 79}** Appellate courts across Ohio have struggled with application of the *Johnson* test. Determining how an offender's conduct should be evaluated in the first prong of the test has been inconsistent. In *Johnson*, Justice O'Connor's concurring opinion properly noted, "[T]he trial court's consideration of whether there should be merger is aided by a review of the evidence introduced at trial." *Id.* at ¶ 69, O'Connor, J., concurring. Despite this, *Johnson* gave no express model or formula to follow when looking at the offender's conduct to determine "[i]f the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other." *Id.* at ¶ 48. Some courts, including the Supreme Court of Ohio, have remanded cases for further review to determine whether the offender's conduct is allied. See *State v. Damron,* 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512; *State v. Miller*, Portage App. No. 2009-P-0090, 2011-Ohio-1161, 2011 WL 861166. Nevertheless, despite remanding cases for review, without more clarity on the test process, inconsistent results in applying the first prong of *Johnson* will continue.

**{¶ 80}** The second prong of the test is even more problematic. The term "animus," as applied to allied offenses, is so amorphous that it defies description. Animus is often described as the offender's "purpose," but when evaluating the facts of a case, a viable argument can always be made that an offender has a separate purpose for each of his offenses involving the completion of criminal conduct. Certainly, when an offender commits a rape or robbery, he has a separate purpose to restrain the victim in

committing the accompanying kidnapping offense. Despite this, kidnapping, in relation to rape or robbery, is almost always considered an allied offense and not separately punishable unless facts establish a separate or distinct pattern of conduct. See *State v. Sidibeh*, 192 Ohio App.3d 256, 2011-Ohio-712, 948 N.E.2d 995; *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345.

{¶ 81} If the conduct of the offender is to be the primary factor in determining whether offenses are allied, then a model or formula for evaluating that conduct is needed. Some decisions have discussed distinctive factors that help the analysis, but have stopped short of creating a workable test. See *Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 ("asportation or restraint [subjects victim to] substantial increase in risk of harm separate [and apart] from that involved in the underlying crime"); *State v. Lee,* 190 Ohio App.3d 581, 2010-Ohio-5672, 943 N.E.2d 602 (the "temporal continuum"); *State v. Williams*, Cuyahoga App. No. 94616, 2011-Ohio-925, 2011 WL 743085 ("proximate conduct").

{¶ 82} At some point, the Supreme Court of Ohio is going to have to revisit *Johnson* and devise a more formal test that encompasses factors like time, distance, harm, risk of harm, and purpose in determining merger of allied offenses.

{¶ 83} In this case, there are multiple, corresponding sets of offenses of illegal use and endangering children. The illegal-use charges arise under R.C. 2907.323(A)(1), which does not allow a person to "create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity." The endangering-children

charges arise under R.C. 2919.22(B)(5), which instructs that a person shall not "[e]ntice, coerce, permit, encourage, compel, hire, employ, use, or allow [a child under 18 years] to act, model, or in any other way participate in, or be photographed for, the production, presentation, dissemination, or advertisement of any material or performance that the offender knows or reasonably should know is obscene, is sexually oriented matter or is nudity-oriented matter."

{¶ 84} Upon review, it is possible to commit the offenses by the same conduct. One can entice a minor to be photographed in a state of nudity while also playing a role in the creation of the nudity-oriented material. Thus, the offenses are allied. The determination then turns to whether the corresponding offenses were in fact committed by the same act and animus.

{¶ 85} Thomas committed the crime of endangering children multiple times. On six occasions, he enticed, encouraged, or compelled the minors to take nude photographs. Once he received the photographs, he e-mailed them to his computer and saved them for his personal gratification, resulting in the illegal-use charges. The record does not reflect any action or intent beyond obtaining the images and retaining them for Thomas's personal use. Rather, the evidence reflects that the corresponding counts were committed by the same actions and with the same animus. Because " 'in substance and effect but one offense has been committed,' " the defendant may be convicted of only one offense on the corresponding counts. *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 43 quoting *State v. Botta* (1971), 27 Ohio St.2d 196, 203, 271

N.E.2d 776.   As the majority finds, "Thomas's actions in soliciting and transferring the photographs of the two victims were the same actions that led to the charges of child endangering."

{¶ 86} I believe that the majority stops short by only requiring the merger of each of the six endangering-children counts with corresponding counts for illegal use.   It is undisputed that only 12 images were created, yet Thomas was charged with 22 counts of illegal use.   The state argues that distinct conduct occurred with regard to Thomas's e-mailing the pictures and then saving them to his computer, resulting in separate counts for each action.   The state ignores that the enticement, creation, and retention of the images by Thomas was part and parcel of the same criminal conduct.   At a minimum, I believe that the 22 illegal-use charges should merge with regard to the 12 photographs to which they correspond.   Further, as Thomas argues, many of the photographs occurred within a short period of time, were of the same victim, and were taken in the same location, reflecting that they were tied to the same criminal animus.   He argues that the evidence supports merging the sentences into four counts of illegal use.   In this regard, I believe that the trial court should conduct a hearing to determine which of these offenses were allied offenses of similar import subject to merger.

{¶ 87} Thomas further claims that possession of criminal tools (Count 39) should merge with importuning (Counts 16-22).   However, he ignores the fact that his cell phone was not the only criminal tool used for the crimes.   In fact, computer devices also were used.

**{¶ 88}** Finally, although the majority does not address the issue, I believe that the trial court abused its discretion in imposing a cumulative sentence of 93 years. In reviewing felony sentencing, appellate courts must apply a two-step approach: "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124 ¶ 4; see also *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

**{¶ 89}** While Thomas's sentence falls within the statutory range and is not contrary to law, I believe that his sentence is disproportionate to the severity of the offense committed. In considering the overriding purposes of felony sentencing, a sentence should be reasonably calculated to be "consistent with sentences imposed for similar crimes committed by similar offenders." See R.C. 2929.11(B). Thomas had an improper relationship with two of his students. He obtained nude photographs of the minors, and he had improper sexual contact with them. He was given the equivalent of a life term for his crimes. Thomas cites several multicount sex-offense cases in which a defendant received a total prison term under 20 years. He indicates that the crimes herein did not involve sexual intercourse. If the charges had been two counts of rape, the maximum consecutive sentence he would have faced would have been 20 years. A felony sentence must not be "so greatly disproportionate to the offense as to shock the

sense of justice of the community." *State v. Chaffin* (1972), 30 Ohio St.2d 13, 17, 282 N.E.2d 46, paragraph three of the syllabus.

{¶ 90} For these reasons, I concur in part and dissent in part.

———————————