[Cite as *State v. Shepard*, 2019-Ohio-3995.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-A-0024** |
| DARRELL A. SHEPARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2018 CR 00429.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Thomas Rein*, 820 West Superior Avenue, Suite 800, Cleveland, OH 44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Darrell A. Shepard ("Mr. Shepard"), appeals the judgment of the Ashtabula County Court of Common Pleas sentencing him to a total prison term of 12 years following his guilty plea to involuntary manslaughter with a firearm specification, having a weapon while under disability, injuring persons or property while hunting, and failure to report knowledge of a death.

{¶2} Mr. Shepard argues (1) he did not enter his guilty plea knowingly, intelligently, or voluntarily because the trial court failed to properly inform him of the maximum penalties pursuant to Crim.R. 11(C)(2)(a), and (2) the record clearly and convincingly failed to support the trial court's imposition of more than a minimum sentence.

{¶3} We find (1) the trial court accurately informed Mr. Shepard of the maximum penalty for each charge to which he was pleading guilty and the maximum total prison sentence of 14 years, making his guilty plea knowing, intelligent, and voluntary under Crim.R. 11(C)(2)(a), and (2) Mr. Shepard has not established that the record clearly and convincingly fails to support the trial court's imposition of a 12-year prison sentence.

{¶4} Thus, we affirm the judgment of the Ashtabula County Court of Common Pleas.

### Substantive and Procedural History

{¶5} On November 27, 2017, Randy Gozzard ("Mr. Gozzard") was part of a four-person hunting party on the first day of hunting season in Monroe Township, Ohio, when he was shot and killed. A subsequent investigation revealed that Mr. Shepard had been unlawfully hunting in the area of the shooting and had fired shots in the vicinity of Mr. Gozzard. There was an active warrant for Mr. Shepard's arrest on the day of the shooting due to his failure to appear for a pending criminal court hearing.

{¶6} A few weeks later, the Ashtabula County Sheriff's Department converged on Mr. Shepard, who was hiding at a residence in Pierpont Township. He was arrested, and several firearms were seized from the residence. Mr. Shepard was not permitted to

be in possession of any firearms both on the dates of the shooting and his arrest as a result of a previous conviction.

{¶7}   According to the state, after his arrest, Mr. Shepard admitted he was hunting on the day of the shooting in the same area where Mr. Gozzard had been killed.  He further admitted he discovered Mr. Gozzard's body after firing shots from a shotgun he possessed at the time and failed to report the shooting death to authorities.

{¶8}   Mr. Shepard identified the shotgun he used while hunting as being one of the firearms seized during his arrest.  According to the state, the Bureau of Criminal Investigation analyzed the shotgun and determined it was operable and matched the 12-gauge shell that the Ohio Department of Natural Resources ("ODNR") had found at the scene of the shooting.

{¶9}   The Ashtabula County Grand Jury indicted Mr. Shepard on the following charges:  involuntary manslaughter in violation of R.C. 2903.01(A), a felony of the first degree, along with forfeiture and firearm specifications (Count 1); having weapons while under disability in violation of R.C. 2923.13(A)(1), a felony of the third degree (Count 2); having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree (Count 3); involuntary manslaughter in violation of R.C. 2903.01(B), a felony of the third degree, with a firearm specification (Count 4); involuntary manslaughter in violation of R.C. 2903.01(B), a felony of the third degree, with forfeiture and firearm specifications (Count 5); prohibition against injuring persons or property while hunting in violation of R.C. 1533.171(A) and R.C. 1533.99(C), a misdemeanor of the first degree (Count 6); hunting without permission in violation of R.C. 1533.17(A) and R.C. 1533.99(A), a misdemeanor of the third degree (Count 7); and failure to report knowledge

3

of a death in violation of R.C. 2921.22(C) and (J), a misdemeanor of the fourth degree (Count 8).

{¶10} Mr. Shepard initially pleaded not guilty to the charges. He subsequently withdrew his former plea of not guilty and entered into a written plea of guilty to involuntary manslaughter with a three-year firearm specification (Count 1), having a weapon while under disability (Count 2), injuring persons or property while hunting (Count 6), and failure to report knowledge of a death (Count 8). The state agreed to dismiss Counts 3, 4, 5, and 7.

{¶11} The plea agreement indicated there was a three-year mandatory sentence for the firearm specification in Count 1 to be served consecutive and prior to any other sentence in the case. The parties agreed to request a presentence investigation and argue Mr. Shepard's sentence to the trial court. The plea agreement also indicated the maximum prison term was 14 years and the maximum fine was $31,250.

### The Plea Hearing

{¶12} The trial court held a plea hearing where it engaged in a lengthy colloquy with Mr. Shepard regarding the proposed written plea of guilty and his various rights. Most relevant to this appeal, the trial court advised Mr. Shepard of the potential penalties associated with each charge to which he was pleading guilty, including the ranges of potential incarceration, the maximum fines, and whether those penalties were mandatory.

{¶13} Specifically, the trial court informed Mr. Shepard that Count 1, involuntary manslaughter, was a felony of the first degree that carried a non-mandatory term of incarceration of at least three years but not more than 11 years, or any number of years between three and 11, and a non-mandatory fine of up to but not more than $20,000; the

4

firearm specification associated with Count 1 carried a mandatory three-year prison sentence which must be served consecutive and prior to any prison sentence in the case; Count 2, having a weapon while under disability, was a felony of the third degree that carried a non-mandatory term of incarceration of at least nine months but not more than 36 months, or increments of months between nine and 36, such as 12 months, 18 months, 24 months, or 30 months, and a non-mandatory fine of up to but not more than $10,000; Count 6, injuring persons or property while hunting, was a misdemeanor of the first degree that carried a non-mandatory term of incarceration of up to but not more than 180 days and a non-mandatory fine of up to but not more than $1,000; and Count 8, failure to report knowledge of a death, was a misdemeanor of the fourth degree which could carry a term of incarceration of up to but not more than 30 days and a fine of up to but not more than $250.

{¶14} The trial court also explained the concept of concurrent and consecutive felony sentences and provided an example. It reiterated that it was required to impose a three-year term of incarceration for the firearm specification to be served prior and consecutive to any prison sentence. The trial court informed Mr. Shepard that if the sentences were imposed consecutively, the maximum prison term would be 14 years and the maximum fine would be $31,250. Mr. Shepard indicated he understood all of this information.

{¶15} The trial court ultimately accepted Mr. Shepard's plea of guilty, found him guilty, ordered a presentence investigation report, and set the matter for sentencing. Both parties filed a sentencing memorandum.

### *The Sentencing Hearing*

{¶16} At the sentencing hearing, the trial court noted the parties' agreement that having a weapon while under disability (Count 2) would merge with involuntary manslaughter (Count 1) and that the state would elect to proceed on Count 1.

{¶17} Mr. Shepard's trial counsel spoke on his behalf and asked the trial court to impose the minimum prison sentence of three years for involuntary manslaughter, along with the mandatory three-year prison term for the firearm specification, for a total prison term of six years.

{¶18} According to trial counsel, the woods where the shooting occurred were located near the house where Mr. Shepard grew up. Mr. Shepard spent much time in the woods as a child to escape abuse and find peace.

{¶19} Trial counsel stated that Mr. Shepard was hunting on the day of the shooting to provide food for his elderly and disabled mother and father. He had missed his court hearing because of drug and alcohol use. His plan was to hunt and chop wood for them and turn himself in. Mr. Shepard shot at a deer but ended up shooting and killing Mr. Gozzard.

{¶20} Mr. Shepard's counsel argued (1) the shooting was a tragic hunting accident for which Mr. Shepard was extremely and genuinely remorseful; (2) but for the fact that Mr. Shepard was not supposed to have a firearm that day, it would have been a misdemeanor offense; (3) Mr. Shepard was well-loved, and several letters of support were submitted on his behalf; (4) Mr. Shepard's conduct qualified as a less serious offense and it was unlikely that he would commit future crimes; (5) based on an analysis of 27 sentences in Ashtabula County following convictions where the victim died, six

defendants were given probation, and a 12-year prison sentence was imposed in only one case; and (6) Mr. Gozzard's consumption of alcohol prior to hunting and the style of hunting in which he was engaged at the time of the shooting, i.e., a deer drive in thick woods with which he was unfamiliar, were contributing factors in his death.

{¶21} Mr. Shepard addressed the trial court and indicated he wanted to apologize to the family and that it was not something he ever meant to do.

{¶22} The state requested a total prison term of at least 12 years. The state disputed the defense's assertion that Mr. Gozzard contributed to his own death, noting that he had permission to hunt on the land and was dressed in a bright orange vest. Mr. Gozzard had drunk a beer, but his blood alcohol level was .04.

{¶23} The state also argued that a seriousness factor was present because Mr. Gozzard died.

{¶24} Although the state recognized that Mr. Shepard had successfully completed community control in the past, the state contended Mr. Shepard had not learned his lesson based on the number of misdemeanor offenses and felony convictions.

{¶25} The state also noted that Mr. Shepard's previous conviction for having a weapon under disability was for a different weapon than in the underlying case. Mr. Shepard was not supposed to possess weapons at all, and on the day of the shooting he was supposed to have been in jail for failure to appear rather than hunting.

{¶26} The state also argued that given Mr. Shepard's prior offenses, the manner in which the offense occurred, and the likelihood that Mr. Shepard would continue to commit crimes, more serious factors outweighed any mitigating factors; the other cases

that the defense cited were not similar situations; and Mr. Shepard showed no remorse because he did not report Mr. Gozzard's death.

{¶27} Mr. Gozzard's surviving spouse, Judee Gozzard, addressed the trial court regarding her husband and the impact of his death on his friends and family.

{¶28} The court indicated that it had listened to both sides and reviewed the letters of support provided on behalf of both sides.

{¶29} With respect to the presentence investigation report, the trial court noted that while there was no known juvenile record, Mr. Shepard's adult record began in 2002 with multiple misdemeanors, including disorderly conduct, domestic violence, two more disorderly conduct convictions, and a violation of a protection order, for which Mr. Shepard successfully completed probation.

{¶30} In 2015, Mr. Shepard was indicted for the felonies of aggravated possession of methamphetamine and possession of criminal tools. He failed to appear for a pretrial hearing, and a warrant was issued for his arrest. He had also failed to appear for sentencing in Conneaut Municipal Court after being convicted of improper handling of firearms in a motor vehicle. In 2018, he was convicted of an additional felony for having weapons while under disability.

{¶31} The trial court indicated it had considered the purposes and principles of the sentencing statutes and the recidivism and seriousness factors and made the following findings: (1) Mr. Shepard had no known juvenile record; (2) he had a history of criminal convictions at the adult level of both misdemeanors and felonies; (3) he had not been law-abiding for several years; (4) the offense occurred while Mr. Shepard was on bond awaiting trial in another case, for which he failed to appear and for which a warrant had

8

been issued for his arrest; (5) he did not respond favorably to sanctions previously imposed of community control and fines because he continued to commit crime, although Mr. Shepard successfully completed community control in 2006 and 2009; (6) he showed remorse by stating he was sorry for committing the offense and apologizing to the victims; (7) he had a drug abuse issue and began using methamphetamine daily about two years ago; (8) he had an active warrant for his arrest for the improper handling of a firearm in a motor vehicle; (9) the conviction for involuntary manslaughter carried a presumption for prison; (10) the offense resulted in the death of the victim, who was much loved by his family; (11) Mr. Shepard had a shotgun when he was a fugitive from justice; (12) he committed the offense when he should not have carried or used a firearm at all; and (13) he failed to report the shooting or assist the victim and chose to leave the area.

{¶32} The trial court found that community control would demean the seriousness of the conduct in the case and its impact upon the victim and would not adequately protect the public and that a sentence of imprisonment was commensurate with the seriousness of Mr. Shepard's conduct and did not place an unnecessary burden on the state.

{¶33} The trial court sentenced Mr. Shepard to a total term of incarceration of 12 years, consisting of: (1) nine years on Count 1, (2) three years on the firearm specification in Count 1, which was required to be served prior and consecutive to the sentence imposed on Count 1 (3) 180 days on Count 6, to be served concurrent to the sentence imposed on Count 1, and (4) 30 days on Count 8, to be served concurrent to the sentences imposed on Counts 1 and 6.

{¶34} The trial court subsequently issued a judgment entry memorializing the sentence.

{¶35} Mr. Shepard now appeals, raising the following two assignments of error:

{¶36} "[1.] Appellant did not enter his guilty plea knowingly, intelligently, or voluntarily because the trial court failed to properly inform him of the maximum penalties as required by Crim.R. 11(C)(2)(a).

{¶37} "[2.] The record clearly and convincingly fails to support the imposition of more than a minimum sentence upon Appellant."

## Guilty Plea

{¶38} In his first assignment of error, Mr. Shepard argues he did not enter his guilty plea knowingly, intelligently, or voluntarily because the trial court failed to properly inform him of the maximum penalties as required by Crim.R. 11(C)(2)(a). Specifically, Mr. Shepard asserts that the trial court incorrectly informed him that the maximum total prison term of all the charges to which he was pleading guilty was 14 years instead of 17 years.

### *Standard of Review*

{¶39} This court reviews de novo whether the trial court accepted a plea in compliance with Crim.R. 11. (Citations omitted.) *State v. Dundics*, 11th Dist. Trumbull No. 2015-T-0047, 2016-Ohio-1368, ¶10.

### *Crim.R. 11(C)(2)(a)*

{¶40} A criminal defendant's choice to enter a guilty plea is a serious decision. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶25. Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid. *Id.*

**{¶41}** Under Crim.R. 11(C)(2), the trial court may not accept a plea of guilty or no contest in felony cases without addressing the defendant personally and (a) determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing, (b) informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence, and (c) informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself. Crim.R. 11(C)(2)(a) through (c); *Clark* at ¶27.

**{¶42}** When the trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), it is presumed the plea was entered involuntarily and unknowingly and therefore invalid. (Citations omitted.) *Clark* at ¶31. However, if the trial court imperfectly explained nonconstitutional matters such as the maximum possible penalty, a substantial-compliance rule applies. (Citation omitted.) *Id.* "Under this standard, a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving,' the plea may be upheld." *Id.*, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

**{¶43}** When the trial court does not substantially comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court partially complied or failed to comply with the rule. If the trial court partially complied, the plea may be vacated only if the defendant demonstrates a prejudicial effect. *Id.* at ¶32. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.*, quoting *Nero* at 108.

### *Compliance*

**{¶44}** The Supreme Court of Ohio has held that Crim.R. 11(C)(2)(a) requires the trial court to explain the maximum sentence for each charge to which a defendant is pleading. *See State v. Johnson*, 40 Ohio St.3d 130, 133 (1988). The trial court is not required to inform the defendant of the maximum total of the sentences or that the sentences could be imposed consecutively. *See id.*; *State v. Thomas*, 197 Ohio App.3d 176, 2011-Ohio-6073, ¶45 (8th Dist.).[1]

**{¶45}** At Mr. Shepard's plea hearing, the trial court properly explained the maximum sentence for each charge: involuntary manslaughter (Count 1), a felony of the first degree, carried a maximum prison term of 11 years; the firearm specification associated with Count 1 carried a mandatory three-year prison sentence; having a weapon while under disability (Count 2), a felony of the third degree, carried a maximum prison sentence of 36 months; injuring persons or property while hunting (Count 6), a misdemeanor of the first degree, carried a maximum jail term of 180 days; and failure to

---

1. The Supreme Court of Ohio recently noted that its decision in *Johnson* was based on the court's interpretation of Crim.R. 11(C)(2)(a), "which has been amended since *Johnson* so that a single plea can now apply to multiple charges, see 83 Ohio St.3d xciii, cix (effective July 1, 1998)." *See State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶15. However, in *Bishop*, the court did not expressly overrule its holding in *Johnson*.

report knowledge of a death (Count 8), a misdemeanor of the fourth degree, carried a maximum jail term of 30 days.

{¶46} If a trial court chooses to offer an expanded explanation of the law in a Crim.R. 11 plea colloquy, the information conveyed must be accurate. *Clark* at ¶39; *see State v. Mitchell*, 11th Dist. Trumbull No. 2004-T-0139, 2006-Ohio-618, ¶15, citing *State v. Engle*, 74 Ohio St.3d 525, 528 (1996) ("When a defendant is induced to enter a guilty plea by erroneous representations as to the applicable law, the plea has not been entered knowingly and intelligently").

{¶47} In this case, the trial court went beyond its legal obligations by, among other things, discussing consecutive sentences and calculating the maximum total prison term. The trial court's calculation of 14 years as the maximum total prison term was factually accurate.

{¶48} As indicated, Mr. Shepard's written plea of guilty involved two felonies and two misdemeanors. A jail term for a misdemeanor is generally served concurrently to a prison term for a felony. *See* R.C. 2929.41(A); *State v. Polus*, 145 Ohio St.3d 266, 2016-Ohio-655, ¶10. Therefore, the trial court properly excluded the maximum jail terms for the two misdemeanors in calculating the maximum total prison term.

{¶49} In addition, the parties subsequently agreed that having a weapon while under disability (Count 2) would merge with involuntary manslaughter (Count 1) for the purposes of sentencing. Thus, at sentencing, Mr. Shepard faced a maximum total prison term of 14 years.

{¶50} We have previously held that a trial court is only required to engage in the merger analysis at sentencing, not prior to the finding of guilt. *State v. May*, 11th Dist.

13

Lake No. 2010-L-131, 2011-Ohio-5233, ¶77; *State v. Shannon*, 11th Dist. Trumbull No. 2017-T-0012, 2017-Ohio-9344, ¶28.

**{¶51}** Involuntary manslaughter and having a weapon while under disability do not appear to constitute allied offenses of similar import subject to merger since they involve separate conduct. *See, e.g., State v. Allen*, Ninth Dist. Summit No. 27494, 2017-Ohio-2831, ¶35 ("The fact that Allen had the gun at all while under disability was sufficient conduct to support that offense. His later failure to secure the gun and to allow his son access to it amounted to separate conduct"). However, the parties expressly agreed to merge those offenses, so the issue is not before us.

**{¶52}** Further, it is not error for the trial court to consider merger at the plea hearing, where, as here, the information was correct. *See Shannon* at ¶38 (Wright, J., concurring in judgment only), citing *State v. Oliver*, 6th Dist. Sandusky No. S-10-040, 2011-Ohio-5305, ¶12 ("[T]he trial court misinformed Shannon he was facing a maximum aggregate prison term of 12 years, when, due to merger, Shannon faced 8 years. When a trial court addresses an issue at a plea, not required under the rule, the plea is invalid when the addressed information is incorrect and prejudicial"). Accordingly, the trial court did not misinform Mr. Shepard in its calculation of the maximum total prison term.

**{¶53}** The cases Mr. Shepard cites are all distinguishable because they involve the trial court either entirely failing to inform the defendant about maximum penalties or providing factually incorrect information. *See State v. Gibson*, 34 Ohio App.3d 146, 147 (8th Dist.1986) (the trial court did not inform the defendant of the applicable maximum penalties); *State v. Telliard*, 8th Dist. Cuyahoga No. 50417, 1986 WL 5289, *2 (May 8, 1986) (the trial court did not inform the defendant about the possible maximum sentence

14

of 15 years); *State v. Robinson*, 8th Dist. Cuyahoga No. 85149, 2005-Ohio-2834, ¶45-46 (the trial court did not inform the defendant about the mandatory prison term of 20 years); *State v. Ashley*, 9th Dist. Medina No. C.A. 2126-M, 1993 WL 89744, *2 (Mar. 31, 1993) (the trial court incorrectly informed the defendant that the maximum possible sentence was 18 months of incarceration); *State v. Caplinger*, 105 Ohio App.3d 567, 571 (4th Dist.1995) (the trial court informed the defendant that the maximum sentence was five years instead of 10); *State v. Calvillo*, 76 Ohio App.3d 714, 720 (8th Dist.1991) (the trial court understated the maximum penalty by 10 years on one charge and overstated the maximum penalty by 3 ½ years on another); *State v. Corbin*, 141 Ohio App.3d 381, 387 (8th Dist.2001) (the trial court did not correctly state the degree of the felony or its maximum penalty).

### *Prejudice*

**{¶54}** Even if we were to consider the court's colloquy to be only in partial compliance with Crim.R. 11(C)(2)(a), Mr. Shepard has not demonstrated that he suffered prejudice, i.e., that he would not have made the plea otherwise. Mr. Shepard makes no such assertion, and the record contains no evidence indicating that Mr. Shepard would have chosen to go to trial if he had been told the maximum total prison term was 17 instead of 14 years. *See Dundics* at ¶21*; May* at ¶79; *Shannon* at ¶28.

**{¶55}** The cases Mr. Shepard cites demonstrate that he was not prejudiced. For example, in *Ashley*, the trial court incorrectly informed the defendant that the maximum possible sentence was 18 months of incarceration, with the possibility of 6 months or one year, but ultimately sentenced him to two to five years. *Id.* at *1-2. Here, Mr. Shepard

was told the maximum total prison term was 14 years and he was ultimately sentenced to less.

**{¶56}** In *Caplinger*, the trial court informed the defendant that the maximum penalty was only half of what it really was (five years in prison versus 10 years), which the Fourth District determined could have inadvertently induced him to enter a guilty plea. *Id.* at 573.

**{¶57}** Similarly, in *Calvillo*, the trial court informed the defendant the maximum penalty for felonious assault was a prison term of 25 years when it was actually 15 years, and the maximum prison term for carrying a weapon while under disability was 18 months when it was actually five years. *Id.* at 720. The Eight District determined that even though the defendant ended up with a sentence less harsh than what he thought he would receive, it was conceivable that he may not have entered a plea if he believed the sentence to be less harsh. *Id.* at 720-21. Rather, he may have been willing to opt for trial and risk that period of incarceration. *Id.* at 721, fn. 5.

**{¶58}** Here, the difference between 14 and 17 years is not analogous to the situations presented in *Caplinger* and *Calvillo*.

**{¶59}** In *Corbin*, the defendant believed his agreed sentence upon entering his guilty plea was only half the potential penalty rather than the maximum. *Id.* at 387. Here, the parties did not agree to a sentence recommendation, and Mr. Shepard ultimately received less than the maximum prison term.

**{¶60}** Finally, we note that the plea agreement negotiated by the state and Mr. Shepard's counsel specifically stated that the maximum prison term was 14 years. Further, Mr. Shepard has challenged the validity of his plea for the first time on appeal

16

without any request before the trial court to withdraw his plea. *See State v. Campbell*, 11th Dist. Lake No. 2018-L-115, 2019-Ohio-1846, ¶18. He had every opportunity to request that the trial court allow him to withdraw his plea and explain the nature of any prejudice. *See id.*

**{¶61}** We conclude that the trial court complied with Crim.R. 11(C)(2)(a) and that Mr. Shepard entered a knowing, intelligent, and voluntary plea of guilty.

**{¶62}** Mr. Shepard's first assignment of error is without merit.

**Sentence**

**{¶63}** In his second assignment of error, Mr. Shepard argues the record clearly and convincingly fails to support the imposition of more than a minimum sentence.

***Standard of Review***

**{¶64}** The standard of review for felony sentences is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶16. That provision states:

**{¶65}** "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

**{¶66}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶67} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶68} "(b) That the sentence is otherwise contrary to law."

{¶69} Mr. Shepard does not argue that his sentence is contrary to law but rather that the record does not support his sentence. "[A]n appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law [i.e., it is within the permissible statutory range and the trial court considered R.C. 2929.11 and 2929.11] only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶23.

### *Supported by the Record*

{¶70} R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. *See* R.C. 2929.12(A). The statute provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. *See* R.C. 2929.12(B) through (E).

{¶71} Mr. Shepard first argues that while he has a criminal record, it is "minimal" compared to "many other defendants in the Ohio criminal justice system."

{¶72} R.C. 2929.12(D)(2) requires the trial court to consider whether "the offender has a history of criminal convictions" as one factor in determining whether an offender is likely to commit a future crime. There is no requirement that the trial court consider the offender's criminal record in comparison to other defendants throughout the state.

18

**{¶73}** Further, Mr. Shepard understates his criminal record. The trial court noted that while Mr. Shepard had no known juvenile record, he began committing crimes as an adult, beginning with misdemeanors such as disorderly conduct, domestic violence, and violation of a protection order, and progressing to felonies such as aggravated possession of methamphetamine, possession of criminal tools, and improper handling of a firearm. On the day of the shooting, Mr. Shepard had two warrants for his arrest for missing hearings in two separate criminal cases.

**{¶74}** Mr. Shepard next argues that the record shows the trial court gave little or no meaningful consideration to the factors set forth in R.C. 2929.12.

**{¶75}** R.C. 2929.11 and R.C. 2929.12 apply as a general guide for every sentencing. *State v. Lloyd*, 11th Dist. Lake No. 2006-L-185, 2007-Ohio-3013, ¶ 44, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶36. These two sections do not mandate judicial fact-finding; rather, a court is merely required to "consider" the purposes of sentencing in R.C. 2929.11 and the statutory guidelines and factors set forth in R.C. 2929.12. *Id.*, citing *Foster* at ¶36-42. The trial court satisfies its obligation to consider the seriousness and recidivism factors by stating that it considered them. (Citations omitted.) *State v. Brown*, 11th Dist. Lake No. 2014-L-075, 2015-Ohio-2897, ¶34.

**{¶76}** The trial court stated at the sentencing hearing and in its sentencing entry that it considered the purposes and principles of the sentencing statutes and the recidivism and seriousness factors. Although not legally required to do so, the trial court made numerous R.C. 2929.12 findings on the record, including the following: (1) Mr. Shepard had no known juvenile record (R.C. 2929.12(E)(1)); (2) he had a history of criminal convictions at the adult level of both misdemeanors and felonies (R.C.

2929.12(D)(2)); (3) he had not been law-abiding for several years (R.C. 2929.12(E)(3));
(4) the offense occurred while Mr. Shepard was on bond awaiting trial in another case,
for which he failed to appear and for which a warrant had been issued for his arrest (R.C.
2929.12(D)(1)); (5) he did not respond favorably to previously imposed sanctions of
community control (R.C. 2929.12(D)(3)); (6) he showed remorse (R.C. 2929.12(E)(5); and
(7) the offense resulted in the death of the victim (R.C. 2929.12(B)(2)).

{¶77} Mr. Shepard cites the Eighth District's decision in *State v. Jones*, 8th Dist.
Cuyahoga Nos. 103290 & 103302, 2016-Ohio-5923, in support of his argument that the
trial court did not consider R.C. 2929.12 factors. However, unlike here, the trial court in
*Jones* did not make any specific findings under R.C. 2929.12. *Id.* at ¶105. Further, the
*Jones* decision was subsequently vacated and superseded on reconsideration, *see State
v. Jones*, 8th Dist. Cuyahoga Nos. 103290 & 103302, 2016-Ohio-7702, and vacated on
reconsideration en banc, *see State v. Jones*, 8th Dist. Cuyahoga Nos. 103290 & 103302,
2018-Ohio-498.

{¶78} Mr. Shepard further argues that the trial court did not give any legal basis
or explanation for not imposing a minimum sentence and did not set forth the proper
reasons for why a minimum sentence would be inappropriate.

{¶79} For a felony of the first degree, it is presumed that a prison term is necessary
in order to comply with the purposes and principles of sentencing under R.C. 2929.11.
R.C. 2929.13(D)(1). A court may impose a community control sanction if it finds such
sanction would adequately punish the offender and protect the public from future crime
and would not demean the seriousness of the offense. R.C. 2929.13(D)(2)(a) and (b);
*Lloyd* at ¶48, citing *Foster* at ¶43. R.C. 2929.13(D)(2) requires findings of fact only when

the trial court overcomes the presumption of imprisonment, i.e., only for downward departures in sentencing. *Lloyd* at ¶48 citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶27.

{¶80} Further, the record demonstrates that the trial court provided reasons for not imposing a minimum sentence. At the sentencing hearing, the trial court stated community control would demean the seriousness of the conduct in the case and its impact upon the victim and would not adequately protect the public. It specifically noted that Mr. Shepard did not respond favorably to previous community control sanctions given that he continued to commit crime.

{¶81} Mr. Shepard next argues that a review of the factors in R.C. 2929.12 clearly and convincingly fails to support the sentence because the "imposition of a maximum penalty is unwarranted."

{¶82} The record shows the trial court recognized factors that weighed in Mr. Shepard's favor, such as his lack of a juvenile record, his remorse, and his previous successful completion of community control. The trial court also recognized factors that weighed against Mr. Shepard, including the fact that the victim died, Mr. Shepard's criminal history, and the fact that Mr. Shepard committed the offense while he was legally prohibited from possessing a firearm and after he had missed two court hearings in other criminal cases.

{¶83} The trial court is not required to give any particular weight or emphasis to a given set of circumstances when considering the statutory factors. *State v. DelManzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23. Further, it is the burden of the defendant to show a sentencing court did not balance the R.C. 2929.12 factors, or that

21

the sentence imposed is "strikingly inconsistent" with the statutory factors as they apply to his case. *State v. Crandall*, 11th Dist. Ashtabula No. 2016-A-0030, 2016-Ohio-7920, ¶37, quoting *State v. Rutherford*, 2d Dist. Champaign No. 08CA11, 2009-Ohio-2071, ¶34. Mr. Shepard has not attempted to meet this burden. And contrary to Mr. Shepard's assertion, his sentence of 12 years was not the maximum penalty available.

{¶84} Finally, Mr. Shepard argues the trial court did not use "the minimum sanctions" that it determined accomplished the overriding purposes of felony sentencing "without imposing an unnecessary burden on state or local government resources" under R.C. 2929.11.

{¶85} At the sentencing hearing, the trial court stated that "a prison sentence does not place an unnecessary burden on the State." This language mirrors that contained in R.C. 2929.11(A) and is sufficient to comply with the requirement to consider the R.C. 2929.11 factors. (Citation omitted.) *State v. Stephens*, 11th Dist. Portage No. 2018-P-0090, 2019-Ohio-3150, ¶18.

{¶86} Mr. Shepard has failed to show that the trial court's findings are clearly and convincingly not supported by the record.

{¶87} Mr. Shepard's second assignment of error is without merit.

{¶88} Based on the foregoing, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.

22